

May 21, 2021

**VIA ELECTRONIC CASE FILING**
Honorable James R. Cho.
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East, Rm. N208
Brooklyn, NY 11201

**Re:**   *Roberto Cruz* **v.** *Joe's Pizza Bedofrd LLC, et al.*
     Case No.: 1:20-cv-04889

Dear Judge Cho:

The undersigned represents Plaintiff Roberto Cruz ("Cruz") and opt-in collective member Arturo Trujillo ("Arturo") (collectively, "Plaintiffs") in the above-referenced matter. Plaintiffs and Defendants Joe's Pizza Bedford LLC d/b/a Joe's Pizza, Pino Pozzuoli a/k/a Joe Pozzuoli, Pino Jr. Pozzuoli a/k/a Joe Jr. Pozzuoli and Pino Vitale (collectively, "Defendants") (Plaintiffs and Defendants are collectively the "Parties") jointly and respectfully request the Court's approval of the settlement agreement entered into between the Parties to resolve this matter. A copy of the settlement agreement is annexed hereto as Exhibit A.

## I. THE SETTLEMENT AGREEMENT IS FAIR AND REASONABLE

### 1. Plaintiffs' Allegations, Defendants' Defenses and Issues in Dispute

On October 12, 2020, Plaintiff Cruz filed this Fair Labor Standards Act ("FLSA") collective action on behalf of himself and all similarly situated former and current employees of Defendant Joe's Pizza Bedford LLC d/b/a Joe's Pizza. On or about March 26, 2021, Plaintiff Arturo filed a consent form to join the action as a collective member. Plaintiffs alleged nine (9) causes of action for violations of the FLSA and New York Labor Law ("NYLL"), including unpaid overtime wages, unpaid minimum wages, retaliation and record keeping and notice violations.

Specifically, as to Plaintiff Cruz, Plaintiffs allege that he was employed by Defendants from November 1, 2015, through September 30, 2020, as a cook. Plaintiff Cruz's duties included preparing and baking pizzas, cleaning the work station and moving incoming boxes to the restaurant. Plaintiffs further allege that throughout the course of Plaintiff Cruz's employment, Defendants failed to pay him overtime and straight time compensation for all hours worked in excess of forty (40) hours per week, and failed to pay him in accordance with the New York State applicable statutory minimum wage. Plaintiffs also allege that Defendants failed to provide Plaintiff Cruz with notice of his hourly and overtime rates of pay, the regular pay day designated by Defendants, or any wage statements, time sheets, or other documents showing the amount of hours worked, rate of pay and compensation owed. Finally, Plaintiffs allege that on or about September 30, 2020, Defendants terminated Plaintiff Cruz's employment in retaliation for Plaintiff Cruz's complaints as to his overtime compensation.

As to Plaintiff Arturo, Plaintiffs allege that he was employed by Defendants from June 1, 2014, through December 1, 2020, as a delivery person and laborer. Plaintiff Arturo's duties included making deliveries, moving incoming boxes to the restaurant, preparing boxes for delivery and assisting in day-to-day operations. Plaintiffs further allege that throughout the course of Plaintiff Arturo's employment, Defendants failed to pay him overtime and straight time compensation for all hours worked in excess of forty (40) hours per week, and failed to pay him in accordance with the New York State applicable statutory minimum wage. Plaintiffs also allege that Defendants failed to provide Plaintiff Arturo with notice of his hourly and overtime rates of pay, the regular pay day designated by Defendants, or any wage statements, time sheets, or other documents showing the amount of hours worked, rate of pay and compensation owed.

Plaintiffs calculated Plaintiff Cruz's estimated damages as approximately $309,500.02, inclusive of minimum wages, overtime compensation, liquidated damages, prejudgment interest, and statutory fines for notice and record keeping violations. Plaintiffs calculated Plaintiff's Arturo's estimated damages as approximately $434,710.55, inclusive of minimum wages, overtime compensation, liquidated damages, prejudgment interest, and statutory fines for notice and record keeping violations.

However, Defendants maintain that they paid Plaintiffs minimum wages and overtime compensation for all hours worked, and that Plaintiffs' alleged employment periods are exaggerated. Defendants also maintain that they provided Plaintiffs with compensation in exchange for executed releases waiving all of their NYLL claims, limiting any potential claims to only claims for alleged unpaid minimum and overtime wages under the FLSA, subject to a two (2) year statute of limitations. Defendants also maintain that Plaintiff Cruz was terminated for legitimate, non-discriminatory reasons and that Plaintiff Cruz never made any complaints concerning his compensation.

**2. The Settlement Amount**

After engaging in mediation, the Parties entered into a settlement agreement resolving all claims in the amount of $60,000, inclusive of attorneys' fees and costs ("Settlement Amount"). Half of

the Settlement Amount will be reported on an IRS Form 1099-MISC as liquidated damages, with the remaining half reported on an IRS W-2 Form as taxable wages.

### 3. The Proposed Settlement Amount is Fair and Reasonable

A court should approve a settlement agreement resolving a labor dispute so long as it "reflects a 'reasonable compromise of disputed issues [rather] than mere waiver of statutory rights brought about by an employer's overreaching." *Le* v. *Sita Information Networking Computing USA, Inc.*, U.S. Dist. LEXIS 46174, at *2 (E.D.N.Y. June 12, 2008); *see also Kopera* v. *Home Depot U.S.A., Inc.*, U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.").

"In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses;' (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel;' and (5) the possibility of fraud or collusion." *Beckert* v. *Rubinov*, 2015 WL 6503832, at *1 (S.D.N.Y. Oct. 27, 2015).

Here, though the Settlement Amount is less than Plaintiffs' estimated damages and the award Plaintiffs could obtain should they prevail on their claims at trial, the Settlement Amount accounts for the difficulties in prosecuting Plaintiffs' claims, as well as the costs and risks of a protracted litigation. Indeed, as discussed in Section I.1, *supra*, Defendants dispute the validity of Plaintiffs' claims and assert that Plaintiffs have previously released any claims they may have had under the NYLL. Accordingly, the Settlement Amount is fair and reasonable. *See Meigel* v. *Flowers of the World NYC, Inc.*, 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. Jan 9, 2012) ("Typically, courts regard the adversarial nature of a FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve settlement."). Further, the settlement agreement was the result of an arm's-length mediation before a neutral meditator, and, thus, it "enjoys a presumption that the settlement achieved meets the requirements of due process." *Hernandez* v. *Anjost Corp.*, 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013). There is no fraud or collusion present here.

### 4. Other Settlement Terms

The terms of the Settlement Agreement are in accordance with *Cheeks* v. *Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The settlement agreement is to be publicly filed for the purpose of judicial review, it does not contain any confidentiality or non-disparagement provision, and its release is limited to wage and hour claims.

**II. THE ATTORNEYS' FEES REQUESTED ARE FAIR AND REASONABLE**

It is within a court's discretion to award attorneys' fees based on either the lodestar method or the percentage of the fund. *See Vasquez* v. *TGD Grp., Inc.*, 2016 WL 3181150, at *4 (S.D.N.Y. June 3, 2016). "'[T]he trend in this Circuit is toward the percentage method,' although it is for district court to determine 'the appropriate method' in a particular case." *Hyun* v. *Ippudo USA Holdings*, 2016 WL 1222347, at *2 (S.D.N.Y. Mar. 24, 2016) (quoting *McDaniel* v. *Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)).

Here, it is respectfully submitted that the attorneys' fees requested are reasonable whether assessed by the percentage of fund method or by the lodestar method.

**1. The Percentage of the Fund method**

Pursuant to the retainer agreement entered into between Plaintiffs and Plaintiffs' counsel, Plaintiffs' counsel respectfully requests attorneys' fees in the amount 33 1/3% of the total net Settlement Amount, totaling $20,000, plus costs and disbursements totaling $2,040.23. Annexed hereto as Exhibit B is a copy of Plaintiffs' retainer agreement. Plaintiffs' have consented to this application for Attorneys' fees. This amount is fair and reasonable considering the risks of litigation and legal work performed.

Indeed, contingent fee agreements in wage and hour cases favor public policy and are "meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand* v. *Greenberg*, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010). There is ample authority in this circuit holding that a 33% attorneys' fee is well within the range of fees typically awarded in wage and hour cases. *See Hyun*, 2016 WL 1222347, at *7 ("Fee awards representing one third of the total recovery are common in this District.").

**2. "Cross-check" with the Lodestar Method**

Following *Goldberger* v. *Integrated Resources, Inc.*, 209 F. 3d 43 (2d Cir. 2000), the trend in the Second Circuit has been to apply the percentage method and to loosely use the lodestar method as a "cross check." *Id*. at 50. In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Id*. Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case . . . ." *Id*. Factors that the court should consider in determining the reasonableness of an award are the following: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id*.

First, Plaintiffs' counsel expended considerable time and effort in litigating this action. Although the case did not proceed to formal discovery, the Parties informally exchanged relevant documentation regarding Plaintiffs' claims. Indeed, Plaintiffs' counsel reviewed voluminous

4

time records and other employment documentation, engaged in numerous settlement conversations with Plaintiffs and Defendants' counsel, and prepared for and engaged in an eight (8) hour mediation session.

Second, as discussed in Section I.1, *supra*, Plaintiffs' counsel had to address multiple legal and factual disputes between the Parties. Third, Plaintiffs' counsel undertook significant risk in prosecuting this matter, agreeing to pay all costs and expenses with uncertainty as to recovery. This risk was exacerbated by the limited documentation in Plaintiffs' possession to corroborate their claims. Fourth, Plaintiffs' counsel has many years of experience litigating wage and hour claims in state and federal courts throughout the State of New York. Despite the challenges of this case, Plaintiffs' counsel successfully obtained a swift and favorable resolution of this matter.

Fifth, Plaintiffs' counsel devoted more than 96.59 hours litigating this matter, totaling $38,554.66 in attorneys' fees billed at an hourly rate of $400. A copy of Plaintiffs' counsel's billing records is annexed hereto as Exhibit C. Thus, in applying the lodestar method as a "cross check," Plaintiffs' counsel's hourly billables are in line with the requested contingency fee in Section II.1, *supra*. Indeed, as this matter has not yet concluded, Plaintiffs' counsel will be required to expend additional time to finalize the settlement agreement and discontinue this action. Plaintiffs' counsel may also be required to enforce the terms of the settlement agreement in the event Defendants default. Thus, Plaintiffs' counsel's hourly rate under this method in fact exceeds the amount requested under their contingent fee arrangement.

Finally, as a matter of public policy, "[t]he purpose of the FLSA attorneys' fee provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances. Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees encourages the vindication of congressionally identified policies and rights." *Grochowski* v. *Ajet Constr. Corp.*, 2002 WL 465272, at *2 (S.D.N.Y. Mar. 27, 2002).

### 3. A Multiplier on the Lodestar is Warranted

Following the calculation of the lodestar, courts often consider whether a multiplier is warranted based on factors such as: (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit;
(3) the quality of representation; and (4) the results achieved. *See In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995). As discussed in Sections II.1-2, *supra*, these factors weigh in favor of a lodestar multiplier.

Courts have awarded lodestar multipliers of up to eight times the lodestar, and, in some cases, even higher. *See, e.g., Vizcaino* v. *Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times); *In re Lloyd's Am. Trust Fund Litig.*, 2002 U.S Dist. LEXIS 22663, at *78-79 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *see also Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, 2012 WL

5

651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar). Here, Plaintiffs' counsel seeks a modest multiplier of 1.2 times the lodestar, a multiplier that is below the lodestar multipliers deemed appropriate in FLSA cases in this district.

### III. CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court approve the settlement agreement in this matter as a fair and reasonable resolution.

Respectfully submitted,

**PARDALIS & NOHAVICKA, LLP**

_____
Israel Klein, Esq.
950 Third Avenue, 25th Floor
New York, New York 10022
Tel: (212) 213-8511
Fax: (347) 897-0094
Israel@pnlawyers.com
*Attorneys for Plaintiff*

cc:   Counsel of Record (via ECF)